87 F.3d 1325
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dwayne TOWNSEND, Defendant-Appellant.
 No. 95-50444.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 3, 1996.*
Decided June 21, 1996.
 
 1
 Before: BRUNETTI and RYMER, Circuit Judges, and TANNER,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Dwayne Townsend appeals his 15-month sentence imposed upon a guilty plea to one count of conspiracy to possess and utter forged checks in violation of 18 U.S.C. § 371, and one count of possessing and uttering a second, forged check in violation of 18 U.S.C. § 513(a). [ER 1]. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM.
 
 STATEMENT OF FACTS
 
 4
 On September 23, 1994, Defendant and one of his coconspirators, May Martinez, deposited two forged checks into two different banks in an attempt to obtain money from the banks into which they had been deposited. Both checks were stolen from the Plastic and Reconstruction Surgery Division of the UCLA Medical Center, and drawn on the UCLA Medical Center's bank account at First Professional Bank.
 
 
 5
 The first check, made out in the amount of $120,000, was deposited by defendant and Martinez into Martinez' personal account at First Interstate Bank of California in Long Beach. The second check in the amount of $250,700 was deposited into the account of Premium Care Family Medical Group (PCFMG) at Bank of America in Long Beach, California.[1] Following the deposits, Martinez called both First Interstate Bank and Bank of America and informed them that she believed that the checks were fraudulent. Neither check was honored by the banks.
 
 
 6
 The Probation Officer, at page 11, paragraph 61 of the PSR, recommended that defendant's offense level be increased by an additional two levels pursuant to U.S.S.G. § 2F1.1(b)(2)(B) because "[the] scheme involved depositing two stolen checks into two separate accounts at two separate banks (FIB and BOA)."
 
 STANDARD OF REVIEW
 
 7
 A district court's interpretation of the sentencing guidelines is reviewed de novo. United States v. O'Neal, 937 F.2d 1369, 1374 (9th Cir.1991). The district court's factual findings are reviewed for clear error. United States v. Lira-Barraza, 941 F.2d 745, 747 (9th Cir.1991) (en banc).
 
 DISCUSSION
 
 8
 Defendant argued at sentencing that he should not receive a two-point multiple victim adjustment pursuant to U.S.S.G. § 2F1.1(b)(2)(B).
 
 
 9
 Guideline section 2F1.1(a) provides a base offense level of 6 for forgery. Subsection (b)(2)(B) allows a two-point increase in the base offense level "[i]f the offense involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim". U.S.S.G. § 2F1.1(b)(2)(B).
 
 
 10
 Defendant argues that there was only one victim, and that commentary note 3 to § 2F1.1 precludes the multiple victim enhancement in the case of a forged check. That provision reads:
 
 
 11
 "Scheme to defraud more than one victim," as used in subsection (b)(2)(B), refers to a design or plan to obtain something of value from more than one person. In this context, "victim" refers to the person or entity from which the funds are to come directly. Thus, a wire fraud in which a single telephone call was made to three distinct individuals to get each of them to invest in a pyramid scheme would involve a scheme to defraud more than one victim, but passing a fraudulently endorsed check would not, even though the maker, payee and/or payor all might be considered victims for other purposes, such as restitution.
 
 
 12
 (Emphasis added).
 
 
 13
 Townsend and his co-conspirators engaged in a scheme to cash two checks at two separate banks. Townsend argues that First Professional Bank is the only entity from which the money would come directly as a result of the deposit of the forged checks, therefore the only victim would have been First Professional Bank. We disagree.
 
 
 14
 Under the California Commercial Code, when collecting banks (here, First Interstate Bank and Bank of America) honor a forged check drawn on the account of another, "payor" bank (here, First Professional Bank), the collecting bank is liable to the payor bank. Thus, if Bank of America and First Interstate Bank had honored the forged checks these banks would ultimately have incurred the loss. See Cooper v. Union Bank, 9 Cal.3d 371, 376, 107 Cal.Rptr. 1, 507 P.2d 609 (1973) (finding that collecting banks are liable to drawer banks when collecting banks pay on forged checks); accord, Hermetic Refrigeration Co. v. Central Valley Nat'l Bank, 493 F.2d 476 (9th Cir.1974). This is because a drawer has a direct cause of action against a collecting bank as a third party beneficiary, "due to the implied presentment warranties of section 4207 owed by the collecting bank to the drawee bank". E.F. Hutton & Co. v. City Nat'l Bank, 149 Cal.App.3d 60, 65, 196 Cal.Rptr. 614, (1983). See also Joffee v. United California Bank, 141 Cal.App.3d 541, 554-558, 190 Cal.Rptr. 443, (1983).
 
 
 15
 We note that in these cases, the banks involved ultimately paid on the forged checks. However, the critical issue is not whether the banks actually lost funds, but whether the scheme was to defraud more than one victim, and whether more than one bank would have lost funds had the scheme succeeded. In this case, Townsend would have received cash directly from First Interstate Bank and Bank of America, had the checks been honored. Thus, we find that there was more than one victim. See United States v. Nazifpour, 944 F.2d 472, 474 (9th Cir.1993) (applying the multiple victim adjustment because 'defendant would have obtained something of value from more than one person').
 
 
 16
 We find that the example given in the commentary contemplates a situation where a single check is fraudulently endorsed and passed along a single chain for payment from maker, to payor to payee. The situation at hand involves two chains, the first involving First Interstate Bank, and the second involving Bank of America; and therefore multiple victims.
 
 
 17
 For the foregoing reasons, the two-point enhancement for multiple victims is appropriate. Defendant's 15-month sentence is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Co-conspirator May Martinez was an employee of PCFMG at the time